UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CONSIGLI CONSTRUCTION COMPANY, INC., | ) | |
| THE ARCHITECTURAL TEAM, INC., | ) | |
| SAGAMORE PLUMBING & HEATING, INC., | ) | |
| CENTRAL CEILINGS, INC., | ) | |
| STOCK BUILDING SUPPLY, LLC, and | ) | |
| DIRECT BUILDERS, INC. | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| CONSIGLI CONSTRUCTION COMPANY, INC., | ) | |
| | ) | |
| Defendant/Third-Party | ) | CIVIL ACTION |
| Plaintiff, | ) | NO. 14-14687-MLW |
| v. | ) | |
| | ) | |
| CENTRAL CEILINGS, INC., et al. | ) | |
| | ) | |
| | ) | |
| Third-Party Defendants, | ) | |
| and | ) | |
| | ) | |
| STOCK BUILDING SUPPLY, LLC, | ) | |
| | ) | |
| Defendant/Third-Party | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIRECT BUILDERS, INC. and | ) | |
| PENN AMERICA INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
STOCK BUILDING SUPPLY, LLC'S AND DIRECT BUILDERS, INC.'S
CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

February 2, 2018

DEIN, U.S.M.J.

## I. INTRODUCTION

This subrogation action arises out of water damage which occurred on January 24, 2014,[1] when plastic water pipes located in a condominium building that was owned by The Freeman Street Condominium Trust (the "Trust") froze and burst.  At the time of the incident, the Trust's property was insured by the plaintiff, Philadelphia Indemnity Insurance Company ("Philadelphia").  After Philadelphia made payments to its insured under the terms of its insurance policy, it brought this action, as subrogee of the Trust, against a number of entities that had been involved in the design and construction of the condominium building.  By its second amended complaint, Philadelphia has asserted claims for negligence and breach of the implied warranties of habitability and good workmanship against the general contractor, Consigli Construction Company, Inc. ("Consigli"), and various subcontractors, including, without limitation, Stock Building Supply, LLC ("Stock"), the framing subcontractor hired by Consigli, and Direct Builders, Inc. ("Direct Builders"), the entity hired by Stock to do the rough framing work.

The defendants have filed a number of cross-claims and third-party claims against each other.  Of relevance to the matters presently before the court, Consigli brought a third-party complaint and cross-claims against Stock under their Subcontract Agreement (the "Subcontract

---

[1] Although the second amended complaint also refers to an incident on January 16, 2012, the plaintiff has voluntarily dismissed its claims relating to that incident.  (See Docket No. 136).

Agreement"), seeking to have Stock defend, indemnify and hold Consigli harmless from Philadelphia's claims.  (See Docket Nos. 28, 36, 43, 73).  Stock, in turn, brought a third party complaint against Direct Builders (and its insurer) under Direct Builders' Contractor Agreement (the "Contractor Agreement") seeking to have Direct Builders defend, indemnify and hold Stock harmless from Philadelphia's and Consigli's claims against Stock.  (Docket No. 68).  Stock's third-party complaint against Direct Builders stands in three counts — contractual indemnity (Count I), breach of contract (Count II) and declaratory judgment (Count III).  The court has ruled previously in this case that Stock had a contractual obligation to defend Consigli against the claims brought against it by Philadelphia.  (See Docket No. 142).  The issue presently before the court is whether Direct Builders, in turn, has a duty to defend Stock.[2]

In particular, this matter is presently before the court on Stock's "Motion for Partial Summary Judgment as to its Cross-Claim Against Direct Builders, Inc." (Docket No. 148) wherein Stock is seeking a ruling under its third-party complaint that Direct Builders has a duty to defend it against the claims brought by Consigli and Philadelphia, and has breached the Contractor Agreement by failing to do so.  Direct Builders has opposed the motion and filed a "Cross-Motion for Summary Judgment Against Stock Building Supply, LLC."  (Docket No. 154).  Therein, Direct Builders argues that Stock's motion should be denied because the defense provision in its contract with Stock has not been triggered.  Additionally, Direct Builders argues that its motion should be granted because Direct Builders' corporate entity was dissolved more

---

[2]  The motions before the court are limited to the duty to defend, and do not address any duty to indemnify.  In addition, the parties informed the court at oral argument that the issues regarding indemnification have been resolved by agreement and are moot.  Therefore, this Report and Recommendation is limited to the issue of whether Direct Builders has a duty to defend Stock.

than three years before any entity filed suit against Direct Builders, and therefore, by operation of Mass. Gen. Laws ch. 156B, § 102, Direct Builders cannot be held liable in this action.

As described below, this court finds that Direct Builders has a duty to defend Stock in this case, and that it has breached its contractual obligations by failing to assume Stock's defense against Philadelphia's and Consigli's claims.[3]  Furthermore, this court finds that Mass. Gen. Laws ch. 156B, § 102 does not shield Direct Builders from this action, as the statute has been superseded by Mass. Gen. Laws ch. 156D, § 14.05, which does not contain any time limit for when suits against a dissolved corporation can be brought.  Therefore, and for all the reasons that follow, this court recommends to the District Judge to whom this case is assigned that Stock's motion for partial summary judgment against Direct Builders (Docket No. 148) be ALLOWED insofar as it relates to Direct Builders' duty to defend Stock, and that Direct Builders' motion for summary judgment against Stock (Docket No. 154) be DENIED.

## II. <u>STATEMENT OF FACTS</u>[4]

The following facts are undisputed unless otherwise indicated.

---

[3]  The parties do not distinguish between Philadelphia's and Consigli's claims, but rather assume that if there is a duty to defend Stock against one of their claims it has a duty to defend against both of their claims.  Similarly, the parties have not asked the court to define the precise scope of the duty to defend.

[4]  Unless otherwise stated, the facts are derived from: (1) the Concise Statement of Material Facts set forth on pages 2-4 of Stock's Memorandum of Law in support of its motion for partial summary judgment (Docket No. 149) ("SF"), and the exhibits referenced therein ("Stock Ex. __"); (2) Direct Builders' Response to Stock's Statement of Material Facts ("DBR") and its Concise Statement of Material Facts ("DBF") set forth on pages 2-3 of Direct Builders' Memorandum of Law in support of its motion for summary judgment (Docket No. 154), and the exhibits referenced therein ("Direct Builders Ex. __"); (3) the Affidavit of David Maille, which is attached to Direct Builders' Opposition to Stock's motion for partial summary judgment (Docket No. 154-1) ("Maille Aff."); and (4) Stock's supplemental facts in opposition to Direct Builders' motion for summary judgment set forth on page 3 of its Opposition to Direct Builders' motion for summary judgment (Docket No. 156) ("SFSupp."), and the exhibit attached thereto ("Stock Supp. Ex. __").

## The Subcontract Agreements

In its second amended complaint, Philadelphia alleges that it insured a condominium building located at 201 Freeman Street, Brookline, Massachusetts (the "Premises"), and that, as a result of the negligent design and construction of the Premises, water supply pipes froze and burst, causing extensive property damage.  (Second Am. Compl. (Docket No. 72) ¶¶ 16-21). Philadelphia further alleges that it paid its insured under the terms of its insurance policy for the water damage, and it has brought the instant action against Consigli, Stock, Direct Builders, and other subcontractors, seeking to recover the amounts it paid to its insured.  (Id. ¶¶ 22-25; see SF ¶¶ 3-4).

Consigli was the general contractor for the construction of the condominiums at the Premises, and it entered into a Subcontract Agreement with Stock for the rough carpentry work at the Premises.  (SF ¶¶ 5-6).  The Subcontract Agreement contained an indemnification provision whereby Stock agreed to defend, indemnify and hold Consigli harmless against any claims brought against the general contractor.  (See Docket No. 142 at 3).  Stock then entered into the Contractor Agreement with Direct Builders to perform the installation of the rough framing at the Premises, which Direct Builders did.  (SF ¶¶ 7-8; DBR ¶ 7).  The Contractor Agreement between Stock and Direct Builders was drafted by Stock, and contains the following provision regarding Direct Builders' duty to indemnify and defend Stock:

> [Direct Builders] agrees to indemnify, hold harmless, and defend [Stock], including property owners and other contractors with which [Stock] has contracted, from and against claims and damages sought by third parties, including claims and damages sought by employees of [Direct Builders] arising out of or resulting from [Direct Builders'] or its subcontractor's operations, installation of [Stock's] products, breach of express or implied warranties, negligent acts or omissions, or workplace safety violations. Provided, however, that [Direct Builders'] obligations herein shall not

> apply if the claims and damages sought arise from the gross or willful and
> wanton negligence [of Stock].

(SF ¶ 9; Stock Ex. 1 at Art. 1.L; DBF ¶ 3).

By correspondence dated January 21, 2016, and then, again, on March 28, 2017, Stock demanded that Direct Builders defend and indemnify Stock in this action pursuant to their Contractor Agreement. (SF ¶¶ 11-12). Direct Builders was involuntarily dissolved on June 18, 2012, and it has not agreed to defend Stock in this action. (Id. ¶ 13; DBF ¶ 2). However, Direct Builders had insurance for its work on the Premises which Stock contends is available to satisfy Direct Builders' defense and indemnification obligations. (See Stock Opp. (Docket No. 156) at 3; Stock Ex. 2 at Ex. 5). At issue on summary judgment is whether Philadelphia's and Consigli's claims against Stock have triggered Direct Builders' duty to assume Stock's defense in this action, and whether Direct Builders has breached the terms of its Contractor Agreement with Stock by failing to defend Stock.

### The Instant Litigation[5]

Philadelphia initiated this action on December 20, 2014, when it filed its original complaint against Consigli, and two subcontractors -- The Architectural Team ("ATI") and Sagamore Plumbing. (Compl. (Docket No. 1)). Therein, Philadelphia alleged that Consigli, ATI and Sagamore Plumbing were responsible for the design and construction of the condominiums at the Premises, and that the losses resulting from the water damage were caused by defects in the defendants' design, materials and workmanship. (See Compl. ¶¶ 13-18). Accordingly,

---

[5] The discussion of the procedural history of this case is limited to the pleadings that are relevant to the instant motions.

Philadelphia, in its capacity as the subrogee of the owner of the Premises, asserted claims against the defendants for negligence and breach of the implied warranties of habitability and good workmanship.  (See Compl. at Counts I-VI).

Although Stock was not named as a defendant in the original complaint, Consigli brought Stock into the litigation by filing a third-party complaint against Stock on or about August 26, 2015.  (See Docket Nos. 28, 36).  Therein, Consigli demanded that Stock defend, indemnify, and hold Consigli harmless against Philadelphia's claims against it.  (See Docket No. 28 at Ex. A, ¶¶ 12, 15).  It later reasserted these claims as cross-claims against Stock.  (See Docket Nos. 43, 73).  As detailed above, on February 24, 2016, Stock, in turn, filed a third-party complaint against Direct Builders and Direct Builders' insurer, Penn America Insurance Company ("Penn America"), in which Stock asserted claims against Direct Builders for contractual indemnity and defense (Count I), breach of contract (Count II), and declaratory relief (Count III). (See Docket No. 68).[6]  This third-party complaint (against Direct Builders only) is at issue in these present motions for summary judgment.

Meanwhile, Philadelphia amended its complaint, first on August 31, 2015 to add direct claims against Stock, and then on March 14, 2016 to add Direct Builders as a direct defendant. (Docket Nos. 41 & 72).  This is the operative pleading in this case.  See Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) ("An amended complaint, once filed, normally supersedes the antecedent complaint" such that "the earlier complaint is a dead letter and no

---

[6]  In Count IV of the third-party complaint, Stock alleges that it is the third-party beneficiary to the insurance contract between Direct Builders and Penn America which was in effect during the construction project, and that Penn America has breached the contract by failing to defend and indemnify Stock against Philadelphia's claims.  This count is not at issue in the present motion for summary judgment.

longer performs any function in the case" (quotations and citations omitted)).  In its second

amended complaint, Philadelphia has asserted direct claims for negligence and breach of the

implied warranties of habitability and good workmanship against Consigli, Stock, Direct

Builders, and others. (See Second Am. Compl. (Docket No. 72)).  With respect to Stock,

Philadelphia alleged as follows:

> 95.   At all times material hereto, defendant Stock acted through its duly authorized agents, servants and employees and therefore is vicariously liable for their actions and inactions.

> 96.   Defendant Stock was a subcontractor responsible for, among other things, the installation of rough framing as part of the construction of the condominiums at the Property.

> 97.   Defendant Stock had a duty to exercise reasonable care in its construction activities during the construction of the condominiums at the Property including the installation of rough framing to ensure that the water piping in the Property was reasonably safe for its intended use and was not exposed to freezing temperatures.

> 98.   Defendant Stock breached its duty by failing to exercise reasonable care in its construction activities at the Property to ensure that its framing work did not leave water supply piping exposed to freezing temperatures.

> 99.   The aforesaid negligence, carelessness, recklessness and negligent acts and/or omissions of defendant Stock were the direct and proximate cause of the January 24, 2014 pipe freeze up and resulting damages sustained by plaintiff's insured.

> 100.   As a direct and proximate result of the negligence of defendant Stock, plaintiff's insured suffered significant water damage to its Property for which plaintiff, Philadelphia, has made, and will make, payments to its insured.

(Second Am. Compl. ¶¶ 95-100; SF ¶ 10).[7]  At issue is whether these allegations are sufficient to invoke Direct Builders' obligation to defend Stock.

Additional facts relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

### A.    Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors, Ltd., 794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d

---

[7]  On August 30, 2017, Philadelphia voluntarily dismissed with prejudice its direct claims against Stock and Direct Builders.  (See Docket No. 157).

836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere

allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a

genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct.

2505, 2514, 91 L. Ed. 2d 202 (1986)).  Where, as here, there are cross-motions for summary

judgment, "the court 'must consider each motion separately,' applying the same standard to

each motion."  Morin v. Leahy, 189 F. Supp. 3d 226, 230 (D. Mass. 2016) (quoting Reich v. John

Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997)).

### B.      Agreement to Defend Stock

Stock contends that under the plain language of the Contractor Agreement's indemni-

fication and defense clause, Direct Builders has a duty to defend Stock from all claims against it

in this matter.  For the reasons that follow, this court agrees and concludes that Direct Builders

is obligated to assume Stock's defense in this action.

### Interpretation of the Parties' Agreement

The parties agree that Massachusetts law controls the instant action.  Under Massachu-

setts law, indemnification provisions, such as the provision set forth in Article 1.L of the

Contractor Agreement, "are construed in accordance with their ordinary and plain meaning and

without any bias in favor of the indemnitor or against the indemnitee."  Caldwell Tanks, Inc. v.

Haley & Ward, Inc., 471 F.3d 210, 217 (1st Cir. 2006).  Thus, indemnification provisions should

neither be "strictly construed [n]or . . . construed against the drafter."  Id. at 215.  Nor should

they be "read with any bias in favor of the indemnitor and against the indemnitee[.]"  Urban

Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass. App. Ct. 100, 107, 616 N.E.2d 829, 834 (1993).

Instead, "such provisions are to be fairly and reasonably construed to ascertain the intention of

10

the parties and to effectuate the purpose sought to be accomplished."  Id.  Where, as here, the "material facts are not in dispute, interpretation of an indemnity clause is an issue of law" for the court.  Caldwell Tanks, Inc., 471 F.3d at 215.[8]

The Contractor Agreement specifically requires Direct Builders to "indemnify, hold harmless, and defend [Stock] . . . from and against claims and damages sought by third parties . . . arising out of or resulting from [Direct Builders'] . . . operations, installation of [Stock's] products, breach of express or implied warranties, negligent acts or omissions, or workplace safety violations."  (Stock Ex. 1 at Art. 1.L).  "In this context, a 'claim' is defined as '[t]he assertion of an existing right' or a 'demand for money, property, or a legal remedy to which one asserts a right.'"  Siemens Indus., Inc. v. Eire Elec. Corp., Civil Action No. 11-10452-RWZ, 2012 WL 5944989, at *1 (D. Mass. Nov. 28, 2012) (quoting Black's Law Dictionary 264 (8th ed. 2004)). "An 'assertion,' in turn, means an 'allegation.'"  Id. (quoting Black's Law Dictionary 124 (8th ed. 2004); Siebe, Inc. v. Louis M. Gerson Co., Inc., 74 Mass. App. Ct. 544, 551, 908 N.E.2d 819, 826 (2009)).  Thus, the plain language of the Contractor Agreement requires Direct Builders to defend Stock against allegations of negligence or breach of express or implied warranty with respect to its work at the Premises.  (Stock Ex. 1 at Art. 1.L).  Thus, the Contractor Agreement clearly and unambiguously identifies a duty to defend Stock.

---

[8]  Direct Builders argues that indemnity and defense provisions should be construed against the drafter, citing as authority Ernest & Norman Hart Bros., Inc. v. Town Contractors, Inc., 18 Mass. App. Ct. 60, 463 N.E.2d 355 (1984).  That case, however, is inapposite, for a number of reasons, including that it addresses the question of the enforceability of (and not the interpretation of) a forum selection clause, and not an indemnity or defense provision.  The law in Massachusetts is clear that indemnification clauses should not automatically be construed against the drafter.  See Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 784 (1st Cir. 2011).

Direct Builders challenges this conclusion on the basis that this indemnification clause is not as broad as Stock's obligation to indemnify Consigli and, therefore, should not be read to include an indemnification obligation on the part of Direct Builders for the allegations made against Stock.  (See Direct Builders' Opp. (Docket No. 154) at 4).  Specifically, under its subcontract with Consigli, Stock was obligated to "assume, on behalf of the General Contractor, . . . the defense of any claim or action which may be brought against the Contractor," and to "reimburse the Contractor for any attorneys' fees and expenses incurred by the Contractor with respect to any such claim."  (Id.).  While this provision may cover more claims than those referenced in Direct Builders' Contractor Agreement, it does not negate the fact that Direct Builders expressly agreed to defend Stock in connection with the precise types of claims asserted in the instant case against Stock: negligence and breach of warranty.  Thus, even if Direct Builders' indemnification obligations are not as broad as Stock's, Direct Builders' obligations apply in the instant case.

Finally, Direct Builders argues, in passing, that it does not have any indemnification obligations because the Contractor Agreement is limited by Mass. Gen. Laws ch. 149, § 29C. That statute provides that "[a]ny provision for or in connection with a contract for construction . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void."  (See Direct Builders' Opp. at 4).  Not only has Direct Builders failed to explain its argument in any substantive way, but the statute does not appear to have any application in the instant case.  Even leaving aside the fact that at present the court is only addressing a duty to defend, and not an indemnification obligation, Stock is seeking indemnity on the basis that

12

any damage was caused by Direct Builders.  Stock is not seeking to hold Direct Builders liable

for injury caused by others.  Therefore, Mass. Gen. Laws ch. 149, § 29C does not shield Direct

Builders from liability for defense or indemnification to Stock.

### Scope of the Defense Obligation

Having determined that the Contractor Agreement clearly and unambiguously identifies

a duty on the part of Direct Builders to defend Stock, the next question is whether the under-

lying claims asserted against Stock fall within the scope of the defense obligation.  See Siebe,

Inc., 74 Mass. App. Ct. at 552, 908 N.E.2d at 827 (explaining that the "next inquiry" after

deciding that a contract includes a clear and unambiguous duty to defend is whether the claims

in the underlying action fall within the scope of the defense provision).[9]  In order to answer this

question, the court must apply the so-called "pleadings test."  Id. at 553, 908 N.E.2d at 827

(quotations and citations omitted).  This test asks whether "the allegations of the [underlying]

complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim"

covered by the contractual duty to defend.  Id. at 553 n.20, 908 N.E.2d at 827 n.20 (quoting

Sterilite Corp. v. Cont'l Cas. Co., 17 Mass. App. Ct. 316, 318, 458 N.E.2d 338, 340 (1983))

(internal quotations omitted) (alteration added).  If so, the indemnitor "must undertake the

defense."  Id. (quoting Sterilite Corp., 17 Mass. App. Ct. at 318, 458 N.E.2d at 340).  See also

Ruggerio Ambulance Serv., Inc. v. Nat'l Grange Ins. Co., 430 Mass. 794, 796, 724 N.E.2d 295,

298 (2000) ("In Massachusetts, an insurer has a duty to defend an insured when the allegations

---

[9]  Although the Siebe court was applying Rhode Island law, it noted that "the relevant Rhode Island law
does not differ in material respect from Massachusetts law."  Siebe, Inc., 74 Mass. App. Ct. at 549, 908
N.E.2d at 824.

in a complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms.") (internal quotations and citations omitted)).[10]

Philadelphia's claims against Stock in the instant case fall within the scope of the defense obligation set forth in Stock and Direct Builders' Contractor Agreement.[11]  As described above, the Contractor Agreement requires Direct Builders to defend Stock from claims arising out of Direct Builders' work.  (See Stock Ex. 1 at Art. 1.L).  Philadelphia has brought claims of negligence and breach of warranty against Stock for rough framing work Stock was obligated to perform under its Subcontract Agreement with Consigli, which work was actually undertaken by Direct Builders pursuant to its Contractor Agreement with Stock.  Since these are claims "arising out of or resulting from [Direct Builders'] operations, installation of [Stock's] products, breach of express or implied warranties, [and/or] negligent acts or omissions," they fall squarely within

---

[10]  Direct Builders argues in passing that "[c]ases involving claims for defense and indemnification against or involving insurers, or otherwise interpreting provisions in insurance policies" are inapposite in the context of this case.  (Direct Builders' Opp. at 4).  Not only does Direct Builders not explain how this argument is relevant to the instant case, but courts interpreting an "indemnity and defense provision in a commercial contract between a general contractor and a subcontractor" consider "the standard utilized in insurance cases."  Siebe, Inc., 74 Mass. App. Ct. at 552-53, 908 N.E.2d at 827 (citing Urban Inv. & Dev. Co., 35 Mass. App. Ct. at 107-08, 616 N.E.2d at 834-35).  In any event, Direct Builders does not take exception to the well-established proposition, as explained in Ruggerio, an insurance case, that the duty to defend is triggered when the allegations of a complaint are "reasonably susceptible" to an interpretation covered by the parties' defense and indemnification agreement.  430 Mass. at 796, 724 N.E.2d at 298.

[11]  Since Consigli's claim for indemnification and defense from Stock is based on Philadelphia's contention that Stock's work was deficient, Philadelphia's allegations are controlling on whether the claims fall within Direct Builders' indemnification obligation.  In any event, as noted above, the parties do not distinguish between Stock's claim for defense of Philadelphia's claims as opposed to defense of Consigli's claims.  Moreover, Direct Builders has only addressed the issue whether Philadelphia's allegations are sufficient to trigger a duty to defend, it does not analyze Consigli's allegations.  (See Direct Builders' Opp. at 5-6).

the scope of Direct Builders' contractual duty to defend.  (Id.; see also Second Am. Compl. at

Counts IX-X).

Direct Builders argues that its defense obligations have not been triggered because the

indemnification provision provides further that Direct Builders' "obligations herein shall not

apply if the claims and damages sought arise from the gross or willful and wanton negligence"

of Stock.  (Stock Ex. 1 at Art. 1.L; Direct Builders' Opp at 4).  However, the duty to defend "is

antecedent to, and independent of, the duty to indemnify" and "is not, and cannot be,

determined by reference to the facts proven at trial."  Boston Symphony Orchestra, Inc. v.

Commercial Union Ins. Co., 406 Mass. 7, 10, 545 N.E.2d 1156, 1158 (1989).  A duty to defend

may exist even if the claim ultimately proves to be unsuccessful.  Urban Inv. & Devel. Co., 35

Mass. App. Ct. at 107, 616 N.E.2d at 834.  Thus, the mere possibility that Stock may ultimately

be found to have been grossly or willfully and wantonly negligent does not negate the duty to

defend.

Moreover, there are no factual allegations in the complaint to suggest that Stock may

have committed "gross or willful and wanton negligence."  See McConville v. MBTA, 852

F. Supp. 1, 3 (D. Mass. 1994) (defining "gross negligence" as conduct characterized by a "high

degree of culpability and indifference to duty" (citing McGrath v. G & P Thread Corp., 353 Mass.

60, 62, 228 N.E.2d 450, 452 (1967))); Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228,

251 (D. Mass. 2012) ("Gross negligence is substantially and appreciably higher in magnitude

than ordinary negligence." (quoting Altman v. Aronson, 231 Mass. 588, 591-92, 121 N.E.2d 505,

506 (1919))).  Even if it did, however, since the allegations of the complaint "are reasonably

susceptible of an interpretation that they state or adumbrate a claim" covered by the

Contractor Agreement's duty to defend, Direct Builders cannot evade that responsibility on the grounds that subsequent factual findings may relieve it of this obligation.  See Siebe, Inc., 74 Mass. App. Ct. at 553 n.20, 908 N.E.2d at 827 n.20 (quotation and citation omitted).

Direct Builders argues further that it has no duty to defend because even though Direct Builders "was the rough framing contractor on the project[,]" "[t]here are no allegations in the Second Amended Complaint describing how the rough framing work led to the negligent installation of plumbing or insulation at the Property or otherwise caused the pipes to freeze." (Direct Builders' Opp. at 5-6).  According to Direct Builders, "[e]ven with a lay person's understanding of sequencing in work, a subcontractor performing rough framing would not even have the opportunity to see how the water piping was installed as the former would be complete before the latter work started."  (Id. at 6).  Stock had raised the identical argument in opposition to Consigli's demand for a defense, and it was rejected by the court.  (See Docket No. 142).  There is no reason to revisit that ruling.

In Massachusetts, a duty to defend contained in a subcontract agreement "may not be called upon unless the underlying complaint states a claim that some action or inaction of the subcontractor was connected to the damage or injury alleged[.]"  Miley v. Johnson & Johnson Orthopaedics, Inc., 41 Mass. App. Ct. 30, 34, 668 N.E.2d 369, 372 (1996).  While there is no need for "definitive proof" that Direct Builders caused Philadelphia's damages, there must be "some allegation in the complaint that [Direct Builders] did something or failed to do something that was related to" Philadelphia's damages.  Ferreira v. Beacon Skanska Constr. Co., Inc., 296 F. Supp. 2d 28, 33 (D. Mass. 2003).  On its face, the second amended complaint satisfies this

requirement.  Therein, Philadelphia alleges that "Direct Builders[] was a subcontractor responsible for, amongst other things, the installation of rough framing as part of the construction of the condominiums at the [Premises]," that Direct Builders breached its duty to use reasonable care by failing "to ensure that its framing work did not leave water supply piping exposed to freezing temperatures[,]" and that Direct Builders' acts and omissions "were the direct and proximate cause of the January 24, 2014 pipe freeze up and resulting damages sustained by plaintiff's insured."  (Second Am. Compl. ¶¶ 113-116).  The same allegations were made against Stock.  (Id. ¶¶ 96-99).  No further details are necessary.  As Judge Wolf explained in finding that Stock had a duty to defend Consigli, "it is not evident to this court that the claim that Stock's 'rough framing' work, if performed negligently, could not have caused or contributed to the pipes freezing and bursting . . . .  In any event, . . . the duty to defend exists even if allegations fail to state a claim for which relief can be granted."  (Docket No. 42 at 8-9).  Philadelphia Indem. Ins. Co. v. Consigli Constr. Co., Inc., No. CV 14-14687-MLW, 2017 WL 1080904, at *3-4 (D. Mass. Mar. 22, 2017) (citing Billings v. Commerce Ins. Co., 458 Mass. 194, 201, 936 N.E.2d 408, 414-415 (2010)).  Since the same allegations have been made against Direct Builders, the entity that performed the rough framing work, they remain sufficient to impose a duty to defend on the part of the rough framing subcontractor.

In a final attempt to delay the imposition of a duty to defend until, at least, further development of the factual record, Direct Builders argues that "the applicable case law for analyzing Stock's motion" is Sheehan v. Modern Continental/Healy, 62 Mass. App. Ct. 937, 822 N.E.2d 305 (2005).  (Direct Builders' Opp. at 5).  In that case, the court found that "there was no basis for imposing upon the subcontractor an immediate duty to defend" the general

contractor in connection with a personal injury claim brought by the subcontractor's employee. Id. at 937, 822 N.E.2d at 306-07.  However, in Sheehan, the plaintiff "had alleged nothing in his complaint to suggest the subcontractor's involvement in his injuries" and the record on summary judgment did not establish, "as a matter of undisputed fact, any extrinsic basis for triggering the subcontractor's duty to defend." Id.  In the instant case, as detailed above, Philadelphia has alleged sufficient facts in the second amended complaint to reasonably link Direct Builders' carpentry work at the condominium project to Philadelphia's harm. Accordingly, the second amended complaint "state[s] a claim that some action or inaction by [Direct Builders] was connected to the injury alleged." Ferreira, 296 F. Supp. 2d at 33. Therefore, this court finds that Direct Builders has a duty to defend Stock against Philadelphia's and Consigli's claims.  Accordingly, this court recommends to the District Judge to whom this case is assigned that Stock's motion for partial summary judgment against Direct Builders be allowed.

### C.   Direct Builders' Argument That Stock's Claim Against It Is Barred By Operation of Law

Direct Builders argues that pursuant to Mass. Gen. Laws ch. 156B, § 102, Stock's claims against Direct Builders are barred by operation of law and thus summary judgment on Stock's claims should enter in favor of Direct Builders.  That statute provides in relevant part:

> Every corporation whose corporate existence for other purposes is terminated ... shall nevertheless **be continued as a body corporate for three years after the time when its existence is terminated**, for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property to any person and to make distributions to its stock-holders ..., but not for the purpose of continuing the business for which it was established ....

Id. (emphasis added).  Thus, Direct Builders argues that Mass. Gen. Laws ch. 156B, § 102

prohibits dissolved corporations from being sued after three years from the date of dissolution.

See Gonzalez v. Progressive Tool & Die Co., 455 F. Supp. 363, 365 (E.D.N.Y. 1978) ("Unless suit is

brought against such a dissolved corporation within three years of dissolution the Massachu-

setts statute [Mass. Gen. Laws ch. 156B, § 102] deprives the corporation of capacity to be

sued.").  See also Holtzman v. Proctor, Cook & Co., Inc., 528 F. Supp. 9, 12 (D. Mass. 1981) (suit

brought more than three years after corporate dissolution barred).  Direct Builders was

involuntarily dissolved on June 18, 2012, and it was not brought into this action by Stock until

February 24, 2016.  Therefore, Direct Builders argues that the suit against it is untimely and

must be dismissed.

In response, Stock argues that Mass. Gen. Laws ch. 156B, § 102 has been superseded by

Mass. Gen. Laws ch. 156D, § 14.05, which took effect on July 1, 2004.  That statute provides in

relevant part:

> (a)   A dissolved corporation continues its corporate existence but may
> not carry on any business except such as is necessary in connection with
> winding up and liquidating its business affairs ....
>
> (b)   Dissolution of a corporation shall not:
>
> ...
>
> (5)   prevent commencement of a proceeding by or against the
> corporation in its corporate name[.]

Stock argues that as a result of the enactment of ch. 156D, § 14.05, the three year period for

bringing suit found in ch. 156B, § 102 is no longer in effect.  This court agrees, and concludes

that the suit against Direct Builders for indemnification was timely, even though it was brought more than three years after Direct Builders was dissolved.[12]

It is true, as Direct Builders argues, that Mass. Gen. Laws ch. 156D, § 14.05(b)(5) contains no direct repeal of the provisions in ch. 156B, § 102, and that the court is "loath to find that a prior statute has been superseded in whole or in part in the absence of express words to that effect or of clear implications." Commonwealth v. Katsirubis, 45 Mass. App. Ct. 132, 135, 696 N.E.2d 147, 149 (1998) (quotation and citation omitted). Nevertheless, the Massachusetts Supreme Judicial Court has held that "where two statutes cover the same subject matter and are inconsistent and repugnant . . . the later statute governs, for otherwise it would be rendered nugatory." Rennert v. Bd. of Trs. of State Colls., 363 Mass. 740, 743, 297 N.E.2d 60, 62 (1973) (citing Porter v. City Council of Malden, 346 Mass. 368, 191 N.E.2d 694 (1963)). "Furthermore, even in cases where it was logically possible that the prior statute continue in force as an exception to a more general subsequent statute, [the court has] held that there was implied repeal where it was necessary to give effect to the apparent legislative intent." Id.

In the instant case, ch. 156D, § 14.05(a) "provides that dissolution does not terminate the corporate existence but simply requires the corporation thereafter to devote itself to winding up its affairs and liquidating its assets." Mass. Gen. Laws Ann. ch. 156D, § 14.05 cmt. (West 2005). Section 14.05(b) "makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution and that suits by or against the corporation are not affected in any way." Id. The new statute addresses the same

---

[12] In light of this conclusion, this court will not address Stock's alternative argument that even if the three year period applies, Stock's third-party complaint should be deemed to relate back to the date on which the original complaint was filed by Philadelphia in 2014.

subjects as the earlier ch. 156B, § 102, but makes no mention of any time period for winding down corporate affairs or bringing suit.  Therefore, the apparent legislative intent was to eliminate the three year period.  See 48 Mass. Prac. Collection Law § 13:24 (4th ed. 2017) ("The former law which referred to a three-year period for a dissolved corporation to wind up its affairs has been repealed.")

Numerous courts addressing these statutes have reached the same results, and no contrary authority has been cited by Direct Builders.  For example, in the Massachusetts Superior Court case of Boyle v. Zurich Am. Ins. Co., No. MICV2011–02244, 2013 WL 5317451 (Mass. Super. Ct. Sept. 24, 2013), the court held that "[a]lthough the prior business corporation statute provided that dissolved corporations generally have only three years to wind up their affairs, see G.L. c. 156B, § 102, that provision has been superseded by G.L. c. 156D, § 14.05, which took effect on July 1, 2004, and which does not impose such a three-year limitation."  Id. at 4.  Similarly, in the Massachusetts Land Court case of Pinewood Rd., Inc. v. Kuntz, No. 15 MISC 000519 (HPS), 2017 WL 361172 (Mass. Land Ct. Jan. 25, 2017), the court held that ch. 156B had been superseded by ch. 156D, and that the three year period for winding up corporate affairs had been eliminated so that a corporation may now "continue to operate indefinitely after dissolution, but only for the purpose of winding up its affairs."  Id. at *7 & n.28.  The Bankruptcy Court has reached the same conclusion that Mass. Gen. Laws ch. 156B was superseded in its entirety by ch. 156D.  See In re Na-Mor, Inc., 437 B.R. 482, 485 n.2 (Bankr. D. Mass. 2010).  See also Mass. Corporation Law & Practice §§ 2.5, 14.1 (2d ed. 2018) ("Upon its effectiveness on July 1, 2004, Chapter 156D replaced Chapter 156B in its entirety . . . .").  Since the three year period of ch. 156B, § 102 is not applicable, Stock's claim for defense and

indemnification against Direct Builders can proceed, and Direct Builders' involuntary dissolution on June 18, 2012 does not shield it from this action.[13]

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Stock's motion for partial summary judgment against Direct Builders (Docket No. 148) be ALLOWED insofar as it relates to Direct Builders' duty to defend Stock, and Direct Builders' motion for summary judgment (Docket No. 154) be DENIED.[14]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[13]  This conclusion is further supported by Mass. Gen. Laws ch. 156D, § 14.09(a) which expressly authorizes a claim against a dissolved corporation to "be enforced against the dissolved corporation to the extent of any undistributed assets, including ... any available proceeds under an insurance policy[.]"

[14]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).